IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DENISE BRIGGS, | § | |
|     Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.4:06-CV-800-Y |
| | § | |
| GINNY VAN BUREN, Warden, | § | |
| FMC-Carswell, | § | |
|     Respondent. | § | |

OPINION AND ORDER SUSTAINING PETITIONER'S OBJECTIONS, REJECTING
MAGISTRATE JUDGE'S RECOMMENDATION and, DIRECTING RESPONDENT TO
CONSIDER PETITIONER FOR RELEASE TO COMMUNITY CONFINEMENT

In this action brought by petitioner Denise Briggs for a writ of habeas corpus under 28 U.S.C. § 2241, the Court has made an independent review of the following matters in the above-styled and numbered cause:

1. The pleadings and record;

2. The proposed findings, conclusions, and recommendation of the United States magistrate judge filed on June 6, 2007; and,

3. The petitioner's written objections to the proposed findings, conclusions, and recommendation of the United States magistrate judge filed on June 25, 2007.

The Court, after **de novo** review, concludes that Petitioner's objections must be sustained, such that the recommendation of the magistrate judge that the petition be denied must be rejected. The Court will direct the respondent to consider petitioner Briggs for placement in community confinement and file a report to this Court, before ruling on Briggs's petition.

Bureau of Prisons ("BOP") inmate/petitioner Denise Briggs, presently housed at FMC--Carswell, is serving a 30-months sentence of imprisonment imposed in United *States v. Briggs,* No. 3:05-CV-

206-M. Briggs's projected release date is March 6, 2008, and she was informed by the BOP that she would be eligible for community confinement placement on December 19, 2007. Briggs seeks to be transferred to community confinement six months prior to her release date, and contends that the BOP's regulations codified at 28 C.F.R 570.20 and 570.22, limiting her Residential Reentry Center[1] placement to only the last 10 percent of her sentence, are in conflict with and in violation of 18 U.S.C. § 3621(b).[2]

*Applicable Statutes and Regulations*

The authority granted to the BOP by Congress for facility designation and prerelease custody is found in two statutes, 18 U.S.C. § 3621(b) and 3624(c). Section 3621(b) provides:

> (b) Place of imprisonment--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether main-

---

[1] Community Corrections Centers ("CCC") also know as "halfway houses," are now designated as Residential Reentry Centers ("RRC"). (Government's Response to Petition at 1.)

[2] The magistrate judge did not address the respondent's argument that Briggs did not complete exhaustion of her administrative remedies. It is well established that a petitioner seeking habeas relief under § 2241 must first exhaust remedies available through the BOP. *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir.1993); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir.1994). An exception to the exhaustion requirement may be made if the petitioner demonstrates "extraordinary circumstances" such as the unavailability of administrative remedies, the inappropriateness of the remedies, or the futility of pursuing such remedies. *Fuller,* at 62. As the policy challenged here is a categorical denial of consideration for community confinement, the Court concludes that any further attempt by Briggs to seek an administrative remedy would be futile. *See Bell v. Wiley,* 481 F.Supp. 2d 1168, 1172 (D.Colo. 2007)("Administrative relief is not a possibility [under 28 C.F.R. § 570.21(b)] because the agency has predetermined the issue.")

tained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence-
    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.[3]

Section 3624(c) states:

(c) Pre-release custody--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.[4]

---

[3] 18 U.S.C.A. § 3621(b)(West 2000).

[4] 18 U.S.C.A. § 3624(c)(West 2000).

The relevant BOP regulations implementing these statutes, effective on February 14, 2005, and applied to Briggs, state the following[5]:

> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.[6]

Section 570.21 states:

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

---

[5] Prior to 2002, the BOP considered inmates for pre-release CCC placement for up to six months prior to their scheduled release date. *See* BOP Program Statement 7310.04 (available at http://www.bop.gov). In December 2002, the BOP adopted a policy providing that transfers to CCCs would be limited to the last ten percent of an inmate's sentence, not to exceed six months. In 2004, two circuit courts held that the 2002 BOP policy change was unlawful given that the plain language of § 3621(b) gave the BOP discretion to transfer an inmate to a CCC at any time. *See Elwood v. Jeter,* 386 F.3d 842 (8th Cir. 2004); *Goldings v. Winn,* 383 F.3d 17 (1st Cir. 2004); *see also United States v. Arthur,* 367 F.3d 119, 121 (2d Cir. 2004)(quoting *Cato v. Menifee,* No. 03-CV-5795, 2003 WL 22725524, at *4 (S.D.N.Y. Nov. 20,2003)("a vast majority" of courts "held the new policy was unlawful"). Subsequently, the BOP proposed new rules "announcing its categorical exercise of discretion for designating inmates to community confinement when serving terms of imprisonment." 69 Fed. Reg. 51213-01, 2004 WL 1835858 (Aug. 18, 2004). Those final rules were published on January 10, 2005, and are now codified at 570.20 and 570.21. 70 Fed. Reg. 1659-01, 2005 WL 34181 (January 10, 2005).

[6] 28 C.F.R. § 570.20(2006).

> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).[7]

*Issue*

The question before this Court is whether the BOP's 2005 rules are contrary to, or a permissible construction of 18 U.S.C. § 3621(b). Four circuit courts of appeals and a judge of this district court have found the 2005 regulations to be contrary to the clear and unambiguous congressional intent articulated in § 3621(b) and held them invalid.[8]

In reviewing an agency's interpretation of a statute, courts apply the test set forth in *Chevron U.S.A., Inc. V. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The Court looks first to "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[9] Only "if the Court determines Congress has not directly addressed the precise questions at issue . . .[such as] if the statue is silent or ambiguous with respect to the specific issue," will the Court

---

[7] 28 C.F.R. § 570.21 (2006).

[8] *Wedelstedt v. Wiley,* 477 F.3d 1160 (10th Cir. 2007); *Levine v. Apker*, 455 F.3d 71 (2d Cir.2006); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir.2006); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, (3rd Cir.2005); *Mihailovich v. Berkebile,* No.3:06-CV-16-3-N, 2007 WL 942091 (N.D.Tex. March 28, 2007).

[9] *Chevron,* 467 U.S. at 842.

reach the question of "whether the agency's answer is based on a permissible construction of the statute."[10]

Although the text of § 3621(b) gives the BOP discretion to make the designation of the place of a prisoner's imprisonment to "any available penal or correctional facility," that designation must be made "considering" the five enumerated factors. All of the circuit courts to consider the statute determined that placement decisions must be carried out with reference to all five factors.[11] Of note to these courts is the statute's use of the word "and" between the fourth and fifth factors, an indication that Congress intended that the BOP weigh all the factors listed.[12] Citing the persuasive reasoning of the four circuit courts, another judge of this court concluded that "[i]n both initial placement and transfer decisions, the five factors must be considered, and three of them require individual consideration. So long as a RRC or halfway house is encompassed within the phrase "penal or correctional facility," § 3621(b) guides the BOP in exercising its discretion to designate

---

[10]*Id*, at 843.

[11]*See Wedelstedt,* 477 F.3d t 1166 ("Section 3621(b) articulates clear and unambiguous congressional intent that all placement and transfer determinations be carried out with reference to each of the five factors enumerated in § 3621(b)(1-5)"); *Levine,* 455 F.3d at 81 (all five factors must be considered); *Fults,* 442 F.3d at 1091 (the statute "lays out criteria that must be considered by the BOP in making placement determinations"); *Woodall,* 432 F.3d at 245 .

[12]*See Wedelstedt,* 477 F.3d at 1165-66; *Levine,* 455 F.3d at 81; *Fults,* 442 F.3d at 1092; *Woodall,* 442 F.3d at 245-46.

6

the precise place of imprisonment."[13] Thus, consistent with these authorities, the Court concludes that the text of § 3621(b) reflects Congressional intent that all five factors must be considered[14] and, under *Chevron,* the BOP must not contradict this congressional intent.[15]

By their own terms, the regulations constitute a "categorical

---

[13]*Mihailovich v. Berkebile*, 2007 WL 942091 at *10.

[14]Although legislative history need not be considered when statutory language is clear, the legislative history related to § 3621 supports a finding that Congress intended that the BOP consider all five factors prior to designating a place of imprisonment. *See Wedelstedt,* 477 F.3d at 1166 n.7; *Woodall,* 432 F.3d at 245-46; *Levin,* 455 F.3d at 71

> (Accompanying § 3621(b), the Senate Judiciary Committee issued a report speaking directly to the nature of the statutory factors . . . The report stated that "[i]n determining the availability or suitability of the facility selected, the Bureau [is] specifically required to consider such factors as [listed in §3621(b)]" and that "[a]fter considering these factors," the BOP may designate a place of imprisonment or enact an inmate transfer. S.Rep. No. 98-225 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3324-25. The report disavows any restriction on the BOP's exercise of discretion, but rather states that it "intends simply to set forth the appropriate factors that the Bureau should consider in making the designations." By "specifically requir[ing]" the BOP to consider the listed factors before it makes placements and expressing intent to "set forth the appropriate factors" to be considered, the report underscores what the textural language itself makes clear: that the enumerated factors are mandatory (footnote and citations omitted)).

[15]*See Wedelstedt,* 477 F.3d 1166-67 (quoting *Chevron,* 467 U.S. at 843 n.9 ("The judiciary . . .must reject administrative constructions which are contrary to clear congressional intent.")

exercise of discretion" providing that the BOP will designate an inmate to community confinement only as a part of pre-release custody and only "during the last ten percent of the prison sentence being served, not to exceed six months."[16] The Tenth Circuit noted that the effect of the statute is to add a requirement not in the statute:

> The regulations, therefore, add a threshold requirement to any placement or transfer decision the BOP might make under 18 U.S.C. § 3621(b). As long as an inmate has more than ten percent of his sentence left to serve (or as long as ten percent of an inmate's remaining sentence exceeds the regulation's six month maximum), the BOP will categorically refuse to consider whether the five statutory factors would, nonetheless, weigh in favor of earlier CCC placement. This categorical refusal to consider the five statutory factors is in direct conflict with the clear congressional command that the factors be considered if a transfer is sought or recommended.[17]

The other circuit courts to have reviewed the regulations balanced against the statute determined that the regulations prevent consideration of the five listed factors because the amount of time an inmate may be assigned to RRC is categorically limited to the lesser of six months or ten percent of a sentence without regard to individual circumstances:

> The regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent circumstances, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may

---

[16] 28 C.F.R. §§ 570.21, 570.21.

[17] *Wedelstedt,* 477 F,3d at 1167.

> not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.[18]

This Court agrees with the reasoning of these cited cases and concludes that the February 2005 regulations, *i.e.,* 28 C.F.R. §§ 570,20 and 570.21, are invalid because they do not permit the BOP to consider RRC placement prior to the last ten percent of a sentence, and they preclude individual consideration of the factors enumerated in § 3621(b).

The respondent argued and the magistrate judge agreed, that the BOP's adoption of the regulations was a permissible construction of the statutes that was owed substantial deference, essentially an argument that the Court should apply the reasonableness standard under *Chevron's* second step. The Court recognizes these arguments, but is persuaded that Congress's enumeration, in 18 U.S.C. § 3621(b), of factors to be considered by the BOP in making a placement designation is clear and unambiguous. This is particularly so where those factors include such individual considerations as the nature and circumstance of the offense, the history and characteristics of the prisoner, and whether there was any statement made by the sentencing court concerning the purposes for the sentence. As the BOP rules conflict with the precise question addressed by Congress, they fail, and this Court is not required to consider whether the agency's implementation of the

---

[18]*Woodall,* 432 F.3d at 244; *Wedelsted,* 477 F.3d 1169; *Levine,* 455 F.3d at 85-87; *Fults,* 442 F.3d at 1092.

rules was permissible.

The respondent and the magistrate judge rely on the Supreme Court's decision in *Lopez v. Davis,* 531 U.S. 230 (2001). There, the Court upheld the BOP's enactment of a rule setting out the conditions of a "non-violent offense," in interpretation of the provision in 18 U.S.C. § 3621(e)(2)(B) for a possible sentence reduction for an inmate convicted of a nonviolent offense.[19] The Court held that an agency can rely on rulemaking to resolve issues of general applicability even with statutory schemes that require individualized determinations.[20] But the Court also acknowledged that the statute did not set forth specific circumstances to answer the precise question at issue, such that the question was whether the agency's rulemaking was a reasonable filling of the statutory gap. Such is not the case with § 3621(b). The Tenth Circuit distinguished *Lopez* from the circumstance at issue:

> The *Lopez* Court was careful to state that 18 U.S.C. § 3621(e)(2)(B), the provision at issue in that case, did not identify any criteria for the BOP to use in either granting or denying early release to individual nonviolent offenders. *Id.* Section 3621(b), in contrast, enumerates five factors, including three that are specific to the individual prisoner, which must be considered prior to any placement or transfer decision. See 18 U.S.C. § 3621(b)(1)-(5); *accord Levine*, 455 F.3d at 85, *Fults*, 442 F.3d at 1091; *Woodall*, 432 F.3d at 247. In determining that Lopez did not control their analysis of §§ 570.20 and 570.21, the Second, Third, and Eighth Circuits concluded that because § 3621(b) contained explicit, inmate-specific factors to guide inmate placement and transfer decisions, § 3621(b) did not contain a gap similar to the statutory provision in *Lopez. Levine*, 455 F.3d at 85; *Fults*, 442 F.3d at 1091; *Woodall,* 432 F.3d. at 246-47. Because we determine §

---

[19]*Lopez,* 531 U.S. at 233-35.

[20]*Id* at 243-44.

10

> 3621(b) to be clear, unambiguous, and distinguishable from the statutory provision in *Lopez*, we reject Respondent's contention that *Lopez* validates the BOP's categorical rule in 28 C.F.R. § 570.21.[21]

This Court, too, concludes that because § 3621(b) sets out specific individualized factors, it is different from the issue resolved by the Supreme Court in reviewing the terms of § 3621(e)(2)(B), such that *Lopez* does not control this Court's review of 28 C.F.R. §§ 570.20 and 21.

Therefore, the findings, conclusions, and recommendation of the magistrate judge are REJECTED.

Petitioner's motion to expedite ruling [docket no. 13] is DENIED as moot.

Unless the BOP, through its Respondent, considers, in good faith, whether petitioner Denise Briggs should be transferred to community confinement considering the five factors set out in § 3621(b), without regard to 28 C.F.R. §§ 570.20 and 570.21, and report such results to this Court within **twenty (20)** days from the date of this order, the Court will grant the petition and order Respondent to release Petitioner to an appropriate community confinement center.

SIGNED October 16, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[21] *Wedelstedt,* 477 F.3d at 1168.